IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM B. TURNER, | |
| Plaintiff, | Case No. 23-2316-DDC-TJJ |
| v. | |
| JAMES DUNKIN, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This is a labor dispute case about an allegedly altered timesheet. Pro se[1] plaintiff William Turner alleges that his supervisor, defendant James Dunkin, impermissibly changed plaintiff's timesheet to reflect that he had taken an unpaid personal day when he clocked out early. In response, defendant filed a Motion to Dismiss (Doc. 9) asserting that this court lacks subject matter jurisdiction and, in any event, plaintiff has failed to state a claim. The court concludes that it has subject matter jurisdiction over the action and grants defendant's Motion to Dismiss for failure to state a claim. To explain its reasoning, the court first must untangle this case's procedural backdrop. It then briefly summarizes the facts governing the motions before proceeding to their merits.

---

[1] Because plaintiff filed his suit pro se, the court construes his filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't serve as a pro se plaintiff's advocate. *See id.* Plaintiff's pro se status doesn't excuse him from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

I.      **Factual Allegations**

The following facts come from plaintiff's Petition (Doc. 1-1 (Pet.)) and the exhibits plaintiff attached to his Petition. *See* Doc. 2. The court accepts the alleged facts as true and views them in the light most favorable to plaintiff, since he's the party opposing the Motion to Dismiss. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on motion to dismiss court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

Plaintiff William Turner worked as a Machinist for BNSF Railway Company ("BNSF") in Kansas City, Kansas. Doc. 2 at 10 (Pl. Ex. 5). On December 27, 2022, plaintiff arrived at work, clocked in at 6:34 a.m., and waited to receive his assignment for the day. *Id.* Around 7:00 a.m., defendant James Dunkin, BNSF General Foreman, assigned plaintiff to work at "the DSF"—a job requiring "winter gear." *Id.* But plaintiff didn't have winter gear with him. *Id.* Plaintiff spoke with the onsite union representative, failed to resolve the winter gear issue, and decided to go home. *Id.* So, at 8:20 a.m., plaintiff notified a shift planner that he was leaving work early and he clocked out at 8:34 a.m. *Id.* Defendant later changed plaintiff's timesheet to reflect that plaintiff left work for personal business and that he shouldn't be paid for his time on duty between 7:00–8:34 a.m. *Id.*

Plaintiff then sued defendant for altering his timesheet. Initially, he filed his case in the District Court of Johnson County, Kansas. Specifically, he filed in the Small Claims Division of that court. Doc. 1-1 (Pet.). Defendant removed the case to our court asserting this case falls within its federal question subject matter jurisdiction. Doc. 1.

## II.    Procedural History

The lone claim at issue emerged in somewhat unusual fashion. The original Petition, as filed in state court, sought $2,000 in damages for lost wages, alteration of timesheet, violation of federal fair labor laws,[2] and pain and suffering. Doc. 1-1 (Pet.). Also, plaintiff attached six exhibits to his Petition. They included timesheet spreadsheets and letters documenting a claim filed by plaintiff's union for lost wages. Doc. 2 at 4. In the attached letters, the Local Chairman of the International Association of Machinists and Aerospace Workers (IAMAW) submitted a claim to BNSF's management "under provisions of . . . the controlling agreement . . . between the BNSF Railway Company . . . and its employees represented by the [IAMAW.]" *Id.* at 10 (Pl. Ex. 5). Once defendant had removed the case to federal court, defendant filed a Motion to Dismiss (Doc. 9). This motion asserts that our court lacks subject matter jurisdiction and, even if jurisdiction exists, the Petition fails to state a claim for which the court could grant relief.

On September 28, 2023, United States Magistrate Judge Teresa J. James convened a status conference. Doc. 17; Doc. 20 (Hr'g Tr.). During this conference, plaintiff reported that he'd resolved his lost wages claim with BNSF, so just his fair labor law claim remains. Doc. 20 at 7–9 (Hr'g Tr. 7:23–9:4). Plaintiff also explained he wanted a declaratory judgment on that claim. *Id.* at 10 (Hr'g Tr. 10:2–16). But the original Petition didn't say anything about a declaratory judgment. *See* Doc. 1-1 (Pet.). So, Judge James interpreted plaintiff's request as an oral Motion to Amend his Petition, reducing plaintiff's claims to a single claim—one seeking declaratory relief, declaring that defendant had violated fair labor laws when he altered plaintiff's timesheet. Doc. 17; Doc. 20 at 12 (Hr'g Tr. 12:4–22). Plaintiff agreed, so Judge James granted

---

[2]    Plaintiff's original Petition asserted a claim for "violation of Federal Labor and Wages Act[.]" Doc. 1-1 (Pet.). Because no law by this name exists, the court interprets this claim to refer to federal fair labor laws, generally.

plaintiff's oral Motion to Amend. Defendant agreed to use his Reply brief to respond to plaintiff's new claim for a declaratory judgment. Doc. 17; Doc. 20 at 12–13 (Hr'g Tr. 12:18–13:7, 13:13–17). Judge James memorialized her rulings in a text Order. Doc. 17.

While this approach is a bit unconventional, it captures the issue efficiently. And so, the court addresses the claims that remained after that September status conference. Plaintiff's original allegation—that defendant had violated fair labor laws when he changed plaintiff's timesheet—remains at issue. Doc. 1-1 (Pet.). But the Petition, as orally amended during the September 2023 status conference, no longer seeks $2,000 in damages for lost wages or pain and suffering. *Id.* Plaintiff's request for declaratory judgment replaced his claims for economic and equitable remedies. Doc. 17. Defendant's Motion to Dismiss (Doc. 9) remains in play—excluding the portions of it addressing plaintiff's abandoned lost wages claim. The court also considers plaintiff's Response (Doc. 15), defendant's Reply (Doc. 19), and plaintiff's "Motion to Deny Defendant['s] Motion To Dismiss,"[3] which the court, in its discretion, treats as a sur-reply (Doc. 21).

The court now addresses defendant's Motion to Dismiss (Doc. 9), pending when plaintiff amended his Petition. The parties agreed that the court could consider defendant's Motion to

---

[3] Sur-replies are permitted only with leave of court and under "rare circumstances" after a showing of good cause. *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (citations and internal quotation marks omitted). This posture is a rare circumstance and so, the court concludes that a sur-reply is warranted. Defendant's Reply introduces a new legal argument against plaintiff's declaratory judgment claim. Doc. 19. Fairness and reason favor granting plaintiff's request to respond to defendant's new attack. The court thus construes plaintiff's "Motion to Deny Defendant['s] Motion to Dismiss" (Doc. 21) as a Motion for Leave to File a Sur-Reply. It grants plaintiff's motion and considers the substance of that motion as plaintiff's sur-reply.

Dismiss against the amended version of plaintiff's claim under federal labor laws. Doc. 17; Doc. 20 at 12–15 (Hr'g Tr. 12:10–15:1). [4]

**III.     Legal Standard**

Defendant moves, in part, under Fed. R. Civ. P. 12(b)(1), asserting that this court lacks jurisdiction over plaintiff's remaining claim. When challenged, the party invoking federal court jurisdiction must shoulder the burden to establish facts necessary to support jurisdiction by the preponderance of evidence. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). "Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (citation and internal quotation marks omitted).

---

[4]     If a plaintiff files an amended complaint after a defendant has filed a motion to dismiss, the court typically denies the motion to dismiss as moot. That's because an "amended complaint supersedes the original complaint and renders the original complaint of no legal effect." *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005). But that's not always the case. The court retains discretion to consider the merits of the motion to dismiss and here, exercising that discretion will serve the interests in Rule 1. *See Pet Food Inst. v. Grisham*, No. 21-CV-48-JCH-SCY, 2021 WL 1317990, at *1 (D.N.M. Apr. 8, 2021) ("Although the Tenth Circuit appears not to have addressed this issue, other circuit courts have held that, after the filing of an amended complaint, the district court may deny as moot the motion to dismiss the original complaint."); *see also Raskin ex rel. JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 282 n.1 (5th Cir. 2023) (holding that "the district court acted within its discretion by ruling on the pending motion" after plaintiff had filed an amended complaint); *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) ("[D]istrict courts may exercise their discretion and apply a pending motion to dismiss to portions of an amended complaint that are substantially identical to the original complaint." (internal quotation marks and citation omitted)); *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020) ("[W]hen a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint.").

Defendant also moves to dismiss plaintiff's claim under Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[,]'" which, as the Supreme Court explained, "'will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### IV.     Analysis

Plaintiff seeks a declaratory judgment that declares defendant violated fair labor laws by altering plaintiff's timesheet. Doc. 17. Defendant responds, asserting that the court should dismiss this claim for two reasons: (1) the court lacks jurisdiction because the Railway Labor Act (RLA) precludes plaintiff's claim; and (2) plaintiff lacks authority to seek a declaratory judgment to enforce the recordkeeping requirements of the Fair Labor Standards Act (FLSA). Doc. 19. The court addresses both arguments, below.

#### A.     The Court Has Subject Matter Jurisdiction Over Plaintiff's Claim.

Defendant argues that plaintiff fails to shoulder his burden to plead facts necessary to support subject matter jurisdiction because: (1) the Declaratory Judgment Act doesn't

6

independently confer jurisdiction on federal courts; and (2) and the RLA precludes the court from hearing the case. Instead, defendant asserts, the National Railroad Adjustment Board (NRAB) must hear and decide the case.[5] Doc. 19.

"The Declaratory Judgment Act does not extend the jurisdiction of federal courts; it only 'enlarge[s] the range of remedies available.'" *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) (quoting *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950)). "Power to issue declaratory judgments must lie in some independent basis of jurisdiction." *Id.* Defendant argues plaintiff can't establish such an independent basis of jurisdiction because the RLA precludes plaintiff's claim.

The RLA "provides a comprehensive and mandatory framework for resolving labor disputes under collective bargaining agreements." *Bhd. of Maint. of Way Employees Div. v. Burlington N. Santa Fe Ry. Co.*, 596 F.3d 1217, 1221 (10th Cir. 2010) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)); *see also* 45 U.S.C. §§ 151–88. The RLA strives "to encourage collective bargaining by railroads and their employees in order to prevent, if possible, wasteful strikes and interruptions of interstate commerce." *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 148 (1969). The RLA created a National Railroad Adjustment Board (NRAB) "as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and

---

[5] Defendant's first argument rejects the premise that plaintiff sues defendant for violating the FLSA. This is a bit of a curious argument because defendant, when he removed this case from state court, invoked the court's federal question jurisdiction over what he presumed was an FLSA claim. *See* Doc. 1 at 1–2 (justifying removal because plaintiff's allegation that defendant violated the "Federal Labor and Wages Act" implicates federal law, meaning, presumably, the Fair Labor Standards Act). And plaintiff consistently has maintained that he's suing defendant for violating "fair labor laws," and that "the RLA and the CBA do not apply to this claim[.]" Doc. 21 at 1.

carriers regarding rates of pay, rules and working conditions." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (citation omitted).

The RLA creates two classes of disputes:  major disputes and minor disputes.  "[M]ajor disputes seek to *create* contractual rights, minor disputes [seek] to *enforce* them." *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 302 (1989) (emphasis added and citation omitted). The pertinent category determines which adjudicative body will resolve the issue. *Id.* at 302–04. Federal courts may resolve major disputes because they aren't subject to NRAB arbitration. *Bhd. of Maint. of Way Employes Div.*, 596 F.3d at 1222.  But the NRAB has exclusive jurisdiction to hear minor disputes.  *Sheehan*, 439 U.S. at 94.  The Tenth Circuit, interpreting Supreme Court decisions, has provided the following guidance for determining whether a dispute is major or minor:

> [L]ook to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action.  The distinguishing feature of such a case is that the dispute may be conclusively resolved by interpreting the existing agreement.  To say a minor dispute can be conclusively resolved by interpreting the [Collective Bargaining Agreement (CBA)] is another way of saying that the dispute does not involve rights that exist independent of the CBA.  The essence of the inquiry is whether the source of a party's asserted legal right is its collective bargaining agreement.

*Bhd. of Maint. of Way Employes Div.*, 596 F.3d at 1222–23 (internal citation and quotation marks omitted).

"Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Sheehan*, 439 U.S. at 94 (citing *Bhd. of R.R. Trainmen v. Chicago, River & Ind. R.R. Co.*, 353 U.S. 30, 40 (1957)).  When in doubt, courts should construe a dispute as a minor dispute. *Bhd. of Maint. of Way Employes Div.*, 596 F.3d 1217, 1223 (10th Cir. 2010) (citing *Bhd. of Locomotive Eng'rs v. Atchison, Topeka & S.F. Ry. Co.*, 768 F.2d 914, 920 (7th Cir. 1985)).  "Indeed, a party bears a 'relatively light burden' in establishing

8

exclusive jurisdiction in the Adjustment Board under the RLA." *Id.* (quoting *Consol. Rail Corp.*, 491 U.S. at 307).

Here, plaintiff contends that the "RLA has no jurisdiction over this matter" because the suit "is a Personal liability claim" against defendant—not BNSF. Doc. 21 at 1. But the controlling question isn't who plaintiff has sued. Instead, the controlling factor is whether "the dispute may be conclusively resolved by interpreting the existing [CBA]." *Norris*, 512 U.S. at 265 (citing *Consol. Rail Corp.*, 491 U.S. at 305–06).

Plaintiff alleges that defendant "deliberately changed Plaintiff['s] Timecard to reflect that plaintiff should not be paid for time worked in which Plaintiff was prepared to work his assigned bid job[.]" Doc. 15 at 1. Following this incident, IAMAW's Local Chairman submitted a claim to BNSF management "under provisions of . . . the controlling agreement . . . between the BNSF Railway Company . . . and its employees represented by the [IAMAW.]" Doc. 2 at 10 (Pl. Ex. 5). This correspondence demonstrates that plaintiff belonged to a union, which had a CBA governing plaintiff's employment with BNSF. The question, then, is whether plaintiff seeks to vindicate rights under the FLSA or under the CBA. Unfortunately, the court can't answer that question because it doesn't have the CBA.

Normally, the court simply would analyze the CBA and decide whether "the dispute may be conclusively resolved by interpreting the existing [CBA]." *Norris*, 512 U.S. at 265 (citing *Consol. Rail Corp.*, 491 U.S. at 305–06); *see Mowry v. United Parcel Serv.*, 415 F.3d 1149, 1157 (10th Cir. 2005) (reviewing detailed provisions of the CBA before concluding that plaintiff's "claim is preempted by federal labor law"); *Evermann v. BNSF Ry. Co.*, 608 F.3d 364 (8th Cir. 2010) (same). But here, neither party has provided the CBA. Without the CBA, the court cannot decide if "the essence of the inquiry" is whether the CBA is "the source of [plaintiff's] asserted

9

legal right." *Bhd. of Maint. of Way Employees Div.*, 596 F.3d at 1222–23; *see also Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir. 1992) ("An analysis of whether [the employer] acted properly or not will inevitably require an analysis of what the CBA permitted."). And without the predicate means to conclude that plaintiff's claim is inextricably intertwined with the CBA—or not—the court can't conclude the RLA precludes the court from deciding this case. The court declines to guess whether the CBA conclusively resolves the dispute. So, defendant has failed to shoulder his "'relatively light burden'" to establish that the NRAB has exclusive jurisdiction over plaintiff's claim here. *Consol. Rail Corp.*, 491 U.S. at 307. Defendant hasn't shown that the RLA preempts this matter. Thus, on this record, the court cannot hold that it lacks subject matter jurisdiction to decide plaintiff's remaining claim.[6]

---

[6]   A few clarifying notes about subject matter jurisdiction in the unusual context presented here.

*First*, there's a difference between preemption and preclusion. A preemption analysis asks whether the RLA preempts *state* law, while a preclusions analysis deals with two *federal* laws—here, the RLA and FLSA. *See Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 661–62 (7th Cir. 2001) ("Unlike cases involving the RLA's *preemption* of state law, [plaintiff's] case forces us to decide whether the RLA *precludes* a claim brought under another federal statute[.]"). Put simply, the "RLA 'preempts' state laws but 'precludes' federal law claims." *Said v. Nat'l R.R. Passenger Corp.*, 390 F. Supp. 3d 46, 51 n.3 (D.D.C. 2019) (citing *Brown*, 254 F.3d at 661). Though preemption and preclusion differ, the analyses are similar enough that courts consider "the RLA preemption standard . . . relevant to the preclusion inquiry, and . . . the preemption standard should govern in a preclusion case unless the analysis of the two federal statutes clearly suggests otherwise." *Brown*, 254 F.3d at 662–63 (collecting cases). So, though defendant raises a *preclusion* argument, the court can apply *preemption* principles.

*Second*, because it can apply preemption cases to this preclusion analysis, the court notes the difference between *complete* preemption and *ordinary* preemption. Complete preemption is a jurisdictional doctrine that allows a defendant to remove a state claim to federal court "when a federal statute wholly displaces the state-law cause of action[.]" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Put differently, "'complete preemption' refers to the replacement of a state cause of action with a federal one." *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996). Ordinary preemption, on the other hand, is an affirmative defense. *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012); *see also Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352–53 (11th Cir. 2003) (explaining difference between ordinary preemption and complete preemption under RLA). And ordinary preemption doesn't "render a state-law claim removable to federal court." *Devon Energy*, 693 F.3d at 1203 n.4 (citations and internal quotation marks omitted).

Here, the court needn't worry about subject matter jurisdiction—not initially, anyway—because defendant properly invoked the court's federal question jurisdiction based on plaintiff's FLSA claim. *See*

10

Having decided as much as it can—for now—about the subject, the court turns to defendant's last argument.

### B. Plaintiff Lacks Authority to Seek Declaratory Judgment on FLSA Recordkeeping Requirements.

Plaintiff alleges that defendant violated the Fair Labor Standards Act because he "changed Plaintiff[']s timecard to reflect (Personal Business.)" even though plaintiff "did not ask for a day off or to take a Personal Business Day." Doc. 15 at 2. Defendant argues that this altered timecard claim fails to state a claim under Rule 12(b)(6) because plaintiff lacks authority to seek a declaratory judgment that defendant violated FLSA's recordkeeping requirements.[7] Doc. 19 at 3. The FLSA's recordkeeping requirements originate from 29 U.S.C. § 211.

Defendant primarily relies on *Elwell v. University Hospitals Home Care Service*, 276 F.3d 832, 843 (6th Cir. 2002). There, the Sixth Circuit explained that the FLSA permits

---

Doc. 1. At the Motion to Dismiss stage, defendant now argues that the RLA *precludes* plaintiff's FLSA claim. He asserts *ordinary preemption* as an affirmative defense. "Ordinary preemption is plainly a viable defense under the RLA[.]" *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005). The subject matter jurisdiction boomerang comes back around: ordinary preemption implicates this court's subject matter jurisdiction because the NRAB has exclusive jurisdiction over minor disputes. *Sheehan*, 439 U.S. at 94. So, the question of subject matter jurisdiction has returned but in a different form; ordinary preemption is an affirmative defense, not a jurisdictional prerequisite. *Devon Energy*, 693 F.3d at 1203 n.4. Defendant now bears the burden of proof—even if that burden is a "relatively light" one. *Bhd. of Maint. of Way Employes Div.*, 596 F.3d at 1223 (citation omitted). Here, defendant has failed to sustain his burden to show that ordinary preemption/preclusion applies. This means the court can continue with the merits of his Rule 12(b)(6) arguments. *See Johnson v. Soo Line R.R. Co.*, No. 17-cv-7828, at *7–8 (N.D. Ill. Feb. 23, 2022) (concluding RLA didn't preclude plaintiff's federal claims because resolution required factual inquiry and then proceeding to Rule 12(b)(6) arguments); *Roslyn v. Nw. Airlines, Inc.*, No. 05-0441 (PAM/RLE), 2005 WL 1529937, at *2–3 (D. Minn. June 29, 2005) (rejecting RLA preclusion of plaintiff's federal claim because "without any development of the factual record, the Court [found] that it [could not] conclusively determine whether or not [plaintiff's] claims [were] dependent on an interpretation of the CBA" and proceeding to defendants' Rule 12(b)(6) arguments).

[7] Defendant makes this point in two separate arguments. They contend that: (1) the FLSA prohibits plaintiff from enforcing § 211(a)'s recordkeeping requirements—only the Secretary of Labor can do that; and (2) the FLSA prohibits plaintiff from seeking declaratory judgment—only the federal government can seek such a remedy. Doc. 19 at 3. Here, plaintiff seeks a declaratory judgment that defendant violated federal labor laws by altering plaintiff's timecard. Doc. 17. That claim blends defendant's recordkeeping and declaratory judgment arguments, so the court addresses them together.

employees to "bring a private action against an employer for unpaid overtime or minimum wages." *Id.* In contrast, FLSA "does not authorize employee suits for violations of the FLSA's recordkeeping requirements." *Id.* Instead, the Sixth Circuit explained, "[a]uthority to enforce the [FLSA's] recordkeeping provisions is vested exclusively in the Secretary of Labor." *Id.* (citing *Powell v. Florida*, 132 F.3d 677, 678 (11th Cir.), *cert. denied*, 524 U.S. 916 (1998) (noting that Secretary of Labor has exclusive authority to bring an action for injunctive relief under the FLSA recordkeeping provisions)). Defendant cites cases in which other federal courts have reached this same conclusion. Doc. 19 at 3 (citing, among other cases, *Lopez v. Tri–State Drywall, Inc.*, 861 F. Supp. 2d 533, 537 (E.D. Pa. 2012) ("[T]here is no private right of action for [an FLSA] record keeping violation.") and *Cunningham v. Elec. Data Sys. Corp.*, 579 F. Supp. 2d 538, 542–43 (S.D.N.Y. 2008) (holding that "there is no private right of action to enforce" the recordkeeping requirements of § 211(c))). Plaintiff provides no arguments or case authority in response. *See generally* Doc. 21.

While defendant cites no binding Tenth Circuit case to support his position, the court finds defendant's persuasive authority persuasive. First, plaintiff doesn't even respond to defendant's recordkeeping argument. And cases like *Elwell* naturally follow from the Tenth Circuit's holding that the right "to sue for injunctive relief under the FLSA"—including § 211(a)'s recordkeeping requirements—"rests exclusively with the federal government." *United Food & Com. Workers Union, Loc. 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d 1193, 1197 (10th Cir. 2000) (concluding union's Declaratory Judgment Act suit failed because only Secretary of Labor could bring suit); *see also Ott v. Chacha in Art LLC*, 506 F. Supp. 3d 1133, 1141 (D. Colo. 2020) (recognizing that only Secretary of Labor, and not an employee, can enforce FLSA recordkeeping provisions (citing *Elwell*, 276 F.3d at 843)). The FLSA doesn't

12

permit plaintiff to sue defendant for declaratory relief for alleged violations of the FLSA's recordkeeping requirement. Only the federal government can do that.

In sum, plaintiff lacks authority to seek a declaratory judgment that defendant violated FLSA's recordkeeping requirements. Because plaintiff lacks authority to assert this claim, he fails to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The court thus grants defendant's Motion to Dismiss (Doc. 9) for failing to state a claim.

## V.      Conclusion

The court grants defendant's Motion to Dismiss (Doc. 9) for failure to state a claim and dismisses plaintiff's only remaining claim against defendant with prejudice. *Slocum v. Corp. Express U.S. Inc.*, 446 F. App'x 957, 960 (10th Cir. 2011) ("Rule 12(b)(6) dismissals, unless otherwise indicated, constitute a dismissal *with* prejudice."). The court does so even though plaintiff's pro se status typically favors dismissal without prejudice. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (extending "to pro se plaintiffs an opportunity to remedy defects potentially attributable to their ignorance of federal law and motion . . . in a Fed. R. Civ. P. 12(b)(6) context") (citation and internal quotation marks omitted); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1483 (3d ed. 2023) ("[I]f it is at all possible that the party against whom a dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."). But here, better pleading can't remedy the claim's underlying flaw—that plaintiff lacks authority to seek a declaratory judgment based on the FLSA's recordkeeping requirements. The court thus dismisses plaintiff's claim with prejudice because defendant has shown that dismissal on the merits is appropriate under controlling law.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant James Dunkin's Motion to Dismiss (Doc. 9) is granted and plaintiff's lone remaining claim is dismissed with prejudice. He has failed to state a claim for which the court can grant relief.

**IT IS SO ORDERED.**

**Dated this 26th day of March, 2024, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree
United States District Judge**
